**O**
**JS-6**

# United States District Court
# Central District of California

VISTANCIA MP LLC et al,

                  Plaintiffs,

    v.

WILMINGTON TRUST, NATIONAL ASSOCIATION,

                  Defendant.

Case № 2:25-cv-09819-ODW (BFMx)

**ORDER GRANTING MOTION TO REMAND [14]; AND DENYING AS MOOT MOTION TO DISMISS [7]**

## I.      INTRODUCTION

Plaintiffs Vistancia MP LLC and Martin Landis filed this action in state court seeking declaratory relief against Defendant Benchmark 2022-B35 Mortgage Trust.[1] (Compl.)  Benchmark removed the action to this Court based on diversity jurisdiction. (NOR ¶ 17.)  Benchmark now seeks to dismiss this action under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(6) and 12(b)(3), or alternatively, transfer

---

[1] Plaintiffs name Benchmark 2022-B35 Mortgage Trust in their Complaint, which is an incomplete name for Defendant Wilmington Trust, National Association as Trustee for the Benefit of the Holders of Benchmark 2022-B35 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2022-B35 and the Uncertificated VRR Interest Owners Lender (collectively, "Defendant" or "Benchmark").  (Notice Removal ("NOR") Ex. A ("Compl.") ¶ 8, Dkt. No. 1-1; NOR ¶¶ 1–2, Dkt. No. 1.)  For clarity, when the Court refers to Wilmington or the Trustee, it refers to the "trustee" only.  When the Court refers to Defendant or Benchmark, it refers to the "trust" entity.

venue to the Southern District of New York under 28 U.S.C. 1404(a). (Mot. Dismiss, Dkt. No. 7.) Plaintiffs, in turn, move to remand for lack of subject matter jurisdiction. (Mot. Remand ("Mot." or "Motion"), Dkt. No. 14.) For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, and **DENIES AS MOOT** Benchmark's Motion to Dismiss.[2]

## II. BACKGROUND

In 2022, Vistancia purchased a commercial property in Arizona. (Compl. ¶ 3.) To finance the acquisition, Vistancia contributed investor equity and entered into a ten-year, interest-only loan (the "Loan"). (*Id.*) Landis is the president of Vistancia's managing entity and personal guarantor under the Loan. (*Id.* ¶¶ 7–8.) Both Vistancia and Landis "are citizens of California." (*Id.* ¶ 8.)

Benchmark, an unincorporated association structured as a commercial mortgage trust, is the lender under the Loan. (*Id.* ¶¶ 3, 5.) At least one of Benchmark's members is a California citizen. (*Id.* ¶ 8.) Benchmark holds the Loan for its members under a 495-page Pooling and Servicing Agreement ("PSA"). (*Id.* ¶ 5.) KeyBank National Association is the "Special Servicer" authorized to service and administer the Loan on behalf of Benchmark's certificate holders. (*Id.*)

During the first two years after the Loan closing, Benchmark and KeyBank reported no issue with the Debt Service Coverage Ratio" ("DSCR"). (*Id.* ¶ 6.) However, Plaintiffs allege that, after the first two years, Benchmark "undertook a rogue disinterpretation" of the DSCR. (*Id.*) They allege that Benchmark "reduced the income numerator of the DSCR by purported expenses that are specifically precluded from the ratio calculation" under the Loan. (*Id.*) They also allege that Benchmark "quietly inserted into the accounting ratio denominator" "an additional phantom charge." (*Id.*) As a result, the "inflated denominator lowers the DSCR" and "triggers diversion of all net income after interest payment" to Benchmark instead of

---

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Vistancia's investors. (*Id.*) Plaintiffs allege that Benchmark has deprived Vistancia's investors of substantial cash income. (*Id.* ¶ 7.) According to Plaintiffs, in addition to seizing income gained from the property's lease, Benchmark demanded $172,000 in shortfall payments through a retroactive claim for the past two years of "low DSCR" results. (*Id.*) Plaintiffs allege that Benchmark threatened to pursue enforcement of Landis's guaranty and foreclosure. (*Id.*) As a result, Landis undertook a personal loan against his home and paid the $172,000 demand to Benchmark. (*Id.*)

Based on these allegations, on September 12, 2025, Plaintiffs filed this action in state court, seeking declaratory relief concerning the proper interpretation of the Loan terms and the parties' rights and obligations. (*Id.*, Prayer for Relief.) On October 14, 2025, Benchmark removed the action to this Court based on diversity jurisdiction. (NOR ¶ 17.) Plaintiffs now move to remand for lack of subject matter jurisdiction based on Benchmark's failure to show that complete diversity exists. (Mot. 1–2.)

### III.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a party may remove a civil action brought in a state court to a district court only if the plaintiff could have originally filed the action in federal court. Federal district courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizens (i.e., diversity is "complete"), and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

There is a strong presumption that a court is without jurisdiction until affirmatively proven otherwise. *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). When a case is removed from state court, the removing party

bears the burden of demonstrating that removal is proper. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017). Removal for lack of jurisdiction under § 1332(a) is strictly construed, and any doubt as to removal is to be resolved in favor of remand. *Id.* at 773–74.

#### IV.      DISCUSSION

Plaintiffs move to remand because Benchmark has not established that complete diversity exists. (Mot. 1–2.) They argue that complete diversity is lacking because Plaintiffs are California citizens and Benchmark is an unincorporated association whose citizenship includes that of its certificate holders, who are also California citizens. (*Id.* at 1.) Benchmark argues that it is an "express trust" and, as such, has no citizenship and only the citizenship of the trustee may be considered." (Opp'n 2, Dkt. No. 24 (emphasis omitted).)

The party invoking a federal court's diversity jurisdiction bears the burden of establishing that diversity jurisdiction exists. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Where diversity jurisdiction depends on the citizenship of an unincorporated entity, the removing defendant must clearly establish what type of entity stands before the court. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity.").

Benchmark's reliance on the Trustee's citizenship alone for purposes of diversity jurisdiction requires two threshold showings. First, Benchmark must show that it is a traditional trust. If Benchmark is a traditional trust, then the Trustee's citizenship "is all that matters for diversity purposes." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016). However, if Benchmark is an unincorporated artificial entity using the "trust" label, then "it possesses the citizenship of all its members." *Id.* Second, Benchmark must also show that the Trustee "is the real party to the controversy" by virtue of its power to "hold, manage, and dispose of assets." *Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 463–65 (1980).

## A.   Entity Form

Plaintiffs argue that Benchmark is an unincorporated entity, not a traditional trust.  (Mot. 1.)  Benchmark contends that it is an "express trust."  (Opp'n 2.)

A traditional trust is not a distinct legal entity, but a fiduciary relationship between multiple people; a traditional trust cannot sue or be sued.  *Americold*, 577 U.S. at 383.  "Such a relationship [is] not a thing that could be haled into court."  *Id.*  Instead, "legal proceedings involving a trust [are generally] brought by or against the trustees in their own name."  *Id.*  As such, when a trustee sues or is sued in her own name, "her citizenship is all that matters for diversity purposes."  *Id.* (citing *Navarro*, 446 U.S. at 462–66).  In contrast, unincorporated entities that, by virtue of state law, bear the "trust" label but "have little in common with this traditional template" are separate legal entities that can sue or be sued.  *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1228 (9th Cir. 2019) (quoting *Americold*, 577 U.S. at 383).  "So long as such an entity is unincorporated, [courts] apply the "oft-repeated rule" that it possesses the citizenship of all its members."  *Americold*, 577 U.S. at 383 (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990)).  Real-estate investment trusts generally consider the trust's shareholders as members for diversity purposes.  *Demarest*, 920 F.3d at 1228–29.

The Court finds that Benchmark has failed to meet its burden to unequivocally show that it is a traditional trust, such that only the Trustee's citizenship must be considered for purposes of diversity jurisdiction.  Benchmark principally relies on *Navarro* to argue that the Trustee's citizenship controls.  (Opp'n 3–4, 9.)  It contends that *Navarro* controls because it "upheld the longstanding rule that the citizenship of an express trust is all that matters for diversity citizenship."  (*Id.* at 3.)  However, Benchmark's reliance on *Navarro* proves too much.  As the Supreme Court explained in *Americold*, "*Navarro* had nothing to do with the citizenship of [a] trust."  577 U.S. at 382 (quoting *Carden*, 494 U.S. at 192–93).  Instead, "*Navarro* reaffirmed a separate rule that when a trustee files suit in *her* own name," her citizenship controls, just as

any natural person's would. *Id.* at 382–83 (citing *Navarro*, 446 U.S. at 465). "This rule coexists" with the rule that "when an artificial entity is sued in *its* name, it takes the citizenship of each of its members." *Id.* at 383. Thus, the Supreme Court rejected exactly what Benchmark asks the Court to do here—equate the label "trust" with trustee-only citizenship for purposes of diversity jurisdiction, without first determining what the entity actually is. *See id.* (holding that "an entity's membership [is not limited] to its trustees just because the entity happens to call itself a trust").

Furthermore, whether the Trustee alone controls Benchmark's assets and litigation bears directly on whether Benchmark is a traditional trust or merely an unincorporated entity using the "trust" label. Benchmark fails to show that the Trustee retains the sole power to "hold, manage, and dispose of assets for the benefit of others" and that Benchmark's certificate holders have "no voice" in Benchmark's investment decisions and cannot "intervene in [its] affairs." *See Navarro*, 446 U.S. at 464–65. The record produced in this case, including the PSA, points in both directions.[3] On the one hand, the Trustee holds legal title in trust. (Def.'s RJN Ex. A ("PSA"), Dkt. No. 24-2.) On the other hand, the certificate holders retain meaningful rights, including the right to remove or replace the Trustee. (PSA § 8.07 (providing that the certificate holders may remove the Trustee by a 50% vote).) The certificate holders may also direct the Trustee to terminate a servicer. (*Id.* § 7.01(a) (stating that certificate holders may, upon written direction to the Trustee and evidence of a 25% vote, direct the Trustee to terminate a servicer).) The directing certificate holder may

---

[3] Both parties request that the Court take judicial notice of the PSA. (Pls.' Req. Judicial Notice ISO Mot. ("Pls.' RJN"), Dkt. No. 15; Def.'s Req. Judicial Notice ISO Opp'n ("Def.'s RJN"), Dkt. No. 24-1.) Due to the PSA's volume, Plaintiffs request that the Court judicially notice only forty-four pages of the 495-page PSA. (Pls.' RJN 2.) Benchmark requests that the Court judicially notice the entire PSA. (Def.'s RJN 2.) The Court may take judicial notice of and consider matters that are not subject to reasonable dispute. Fed. R. Evid. 201(b). While "undisputed matters of public record" are judicially noticeable, a court may not take judicial notice of disputed facts in public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). To the extent the Court relies on the PSA to resolve this Motion, the Court **GRANTS** Benchmark's request and takes judicial notice of the PSA but does not judicially notice disputed facts contained therein. *Id.* at 689. As the Court takes judicial notice of the entire PSA, the Court **DENIES** Plaintiffs' request **as moot**.

also advise as to major decisions and delegate substantial administration, servicing, and foreclosure functions to non-trustee actors. (*Id.* § 6.09 (outlining the rights of the directing certificate holder).) At minimum, these features create uncertainty regarding whether Benchmark functions more like the traditional trust in *Navarro* or more like the unincorporated entity in *Americold*. These features are also difficult to reconcile with the notion that the Trustee alone exercises the traditional powers of trust ownership, management, and control. *Navarro*, 446 U.S. at 465 (holding that active trustees exercise "real and substantial" control over the assets held in their names and "control the litigation"). This uncertainty cuts against Benchmark as the party that bears the burden to establish federal jurisdiction. *Corral*, 878 F.3d at 773. On this record, it is unclear whether the Trustee's citizenship alone controls. Moreover, Benchmark does not identify the citizenship of its certificate holders or explain why their citizenship may be disregarded. (*See generally* Opp'n.) This omission is significant, as Plaintiffs allege that at least one of Benchmark's certificate holders is a citizen of California, and Plaintiffs are also citizens of California. (FAC ¶ 5.) If true, complete diversity is lacking and the Court does not have subject matter jurisdiction.

Accordingly, for purposes of determining complete diversity, Benchmark has failed to show, as is its burden, that it is anything other than an unincorporated entity labeled as a "trust," such that it takes the citizenship of all of its members. *Carden*, 494 U.S. at 195; *see Hertz*, 559 U.S. at 96 ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it.").

**B.      Real Party to the Controversy**

Even if the Court found that Benchmark is a traditional trust, Benchmark also fails to show that the Trustee alone is the real party to the controversy. Plaintiffs argue that the Trustee "is nothing more than an agent" for Benchmark's certificate holders. (Mot. 4–6.) Benchmark contends that the Trustee is a true trustee and the real party in this controversy because it is the "owner of a pool of mortgage loans" and "holds trust assets for the benefit" of Benchmark's certificate holders. (Opp'n 10–12.)

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 461. A nominal party is one "who holds the subject matter of the litigation in a subordinate or possessory capacity." *SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (citation modified). "[A]ctive trustees whose control over the assets held in their names is real and substantial" are the real parties to the controversy. *Navarro*, 446 U.S. at 465. "They have legal title; they manage the assets; they control the litigation." *Id.* They are not "'naked trustees' who act as 'mere conduits' for a remedy flowing to others." *Id.* (quoting *McNutt v. Bland*, 43 U.S. 9, 13–14 (1844)). "If [the trustees] are the principals and are free from the control of the certificate holders in the management of the property, a trust is created." *Hecht v. Malley*, 265 U.S. 144, 147 (1924). However, "if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created." *Id.*

Here, the terms of the PSA do not conclusively establish that the Trustee alone exercises control over the assets and litigation. As discussed above, while the PSA indicates that the Trustee holds trust assets, it also indicates that at least some enforcement-related functions are performed by non-trustee actors. (*See generally* PSA.) For example, servicing and administrative responsibilities are exercised by other entities, such as KeyBank. (*Id.* §§ 3.01–3.32.) Moreover, as Benchmark itself acknowledges, the economic benefits from the enforcement of the Loan flow to the certificate holders. (Opp'n 10 ("Wilmington holds these assets in trust for the benefit of registered holders.").) As further evidenced by the PSA, certificate holders may remove or replace the Trustee, (PSA § 8.07), indicating that it remains subordinate to investor control rather than sovereign over the trust assets. Additionally, the certificate holders may institute suit upon providing written notice to the Trustee of a default affecting them and obtaining a 25% vote if the Trustee fails to "institute such action" within sixty-days. (*Id.* § 12.02.)

These features weaken Benchmark's argument that the Trustee alone controls the assets and the litigation. *Navarro*, 446 U.S. at 465. Where, as here, the trustee's actions are heavily cabined by contract, and economically interested actors retain meaningful control over major decisions, the trustee becomes a "mere conduit[] for a remedy flowing to others." *See id.* The record leaves genuine uncertainty regarding whether the Trustee alone has undivided control over the trust res and litigation. If the Trustee is not the only real party to the controversy, Benchmark cannot rely on the Trustee's citizenship alone and must instead account for the citizenship of all relevant certificate holders whose interests are at stake. Benchmark fails to do so. As discussed above, this failure is consequential because Plaintiffs allege that at least one of Benchmark's certificate holders is a citizen of California, and Plaintiffs are likewise citizens of California. (FAC ¶ 5.) If so, complete diversity is lacking.

In sum, as federal jurisdiction may not rest on assumptions about organizational form or party status, the Court finds that Benchmark has failed to adequately allege diversity jurisdiction. Thus, the Court **GRANTS** Plaintiffs' Motion to Remand.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand. (Dkt. No. 14.) The Court hereby **REMANDS** this action to the Superior Court of the State of California, County of Los Angeles, Santa Monica Courthouse, 1725 Main Street, Santa Monica, California 90401, Case No. 25SMCV04767.

In light of this disposition, the Court **DENIES** Benchmark's Motion to Dismiss or Transfer **AS MOOT**. (Dkt. No. 7.)

All dates are hereby **VACATED**. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

April 29, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**